UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 8:91-cr-301-CEH-TGW

LEVINE JUSTICE ARCHER
_____/

**ORDER**

This matter comes before the Court on Defendant Levine Justice Archer's Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 1357). In the motion, Defendant requests compassionate relief pursuant to the First Step Act due to his age and deteriorating health. Although he states that this is not a COVID-19[1] motion, he contends the possibility that he could be reinfected with the virus further supports his claim of extraordinary and compelling circumstances. Defendant seeks a reduction of his life sentence to time served. The Government filed a response in opposition (Doc. 1358), and Defendant replied (Doc. 1361). The Government supplemented its response, providing additional medical records and advising the Court that the Department of Homeland Security, Immigrations and Customs Enforcement (ICE) put in place an immigration detainer for Defendant on or about September 24, 2017. Doc. 1363.  A hearing on the motion was held January 29, 2021. Thereafter, the Court permitted Defendant to file a reply to the Government's

---

[1] Coronavirus disease 2019, known as COVID-19, is the illness caused by the SARS-CoV-2 virus. On March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

supplement, which he did on February 11, 2021, addressing the ICE detainer and his alternative release plans. Doc. 1368. The Government then filed a supplemental memorandum (Doc. 1369), to which Defendant replied (Doc. 1372). On August 5, 2021, Defendant filed a supplement to his compassionate release motion providing additional evidence regarding his deteriorating medical condition. Doc. 1385. The Court, having carefully considered the motion, the record, argument of counsel, the parties' submissions, and being fully advised in the premises, will grant Defendant's Motion for Compassionate Release.

I.     BACKGROUND

Defendant, who is now 67 years old, is serving a life sentence at FCI Coleman Medium. *See* https://www.bop.gov/inmateloc// (last accessed Oct. 21, 2021). He has been incarcerated for approximately thirty years. He is a native of Jamaica. In the early 1990's, he was a member of a racketeering enterprise known as the "Mathis Organization." Doc. 1330. This enterprise flooded the St. Petersburg area with cocaine base (also known as "crack cocaine") in the late-1980s through the early 1990s and used violence and the threat of violence to enforce its control over the area. *Id*. After a 1993 jury trial, Defendant was found guilty on two counts of conspiring to commit racketeering activities, as well as conspiracy to distribute cocaine base, and two substantive counts of distributing cocaine base. Docs. 1213-1; 1213-9. Defendant was sentenced on August 18, 1993 to life imprisonment on each of the five counts, to run

concurrently, with ten years of supervised release for each count to run concurrently.[2] Doc. 1213-13.

On November 24, 2020, Defendant filed the instant motion requesting modification of his sentence to time served due to his age and multiple medical conditions that he alleges result in a serious deterioration in his physical health due to the aging process. Doc. 1357. Defendant alleges he suffers from a plethora of health issues, including diabetes, obesity, hypertension, and a history of coronary atherosclerosis. In support of his motion, Defendant filed a health problems chart (Doc. 1357-2) and select medical records (Doc. 1357-5), documenting these conditions. On August 5, 2021, Defendant filed additional medical records, updating his medical status and addressing his health problems over the last year related to his chronic kidney disease, glaucoma, cardiac issues, COVID-19 diagnosis in July 2020, fecal blood, and severe pain in his lower back, buttocks, and legs. Doc. 1385.

The Government opposes Defendant's motion, arguing that his request has previously been made and denied.[3] Doc. 1358. Although the Government does not specifically address the § 3553(a) factors in its response, it notes that during his incarceration, Defendant was disciplined for eleven different infractions. The Government primarily argues that Defendant fails to demonstrate that his medical conditions constitute extraordinary and compelling reasons for a reduction in his

---

[2] Count five (conspiracy to distribute cocaine base) provided for a mandatory life sentence under the statute. *See* Doc. 1213-13 at 1.
[3] According to the Government, Archer sought a commutation of his sentence from President Obama, who denied Defendant's request. Doc. 1358 at 3; Doc. 1358-2.

3

sentence. In a supplement to its response, the Government advises that an immigration detainer has been in place for Defendant since September 4, 2017, the presence of which the Government argues raises several issues regarding Defendant's request for release. Doc. 1363 at 2. An appropriate release plan is essential, and the Government submits that Defendant's release to St. Petersburg, Florida may not be viable due to the detainer. Moreover, release to an immigration facility may pose greater health concerns. Finally, the Government filed copies of Defendant's medical records under seal, which the Government argues demonstrate that Defendant's medical conditions do not rise to the level of extraordinary and compelling circumstances to merit release and further fail to show he is unable to provide self-care. Doc. 1367.

In a sur-reply, Defendant submits that the Government's reliance on cases pertaining to the ability to provide self-care is misplaced. He clarifies that he is not seeking a reduction in his sentence based on USSG § 1B1.13 cmt. n.1(A)(i) or (ii), which are separate and distinct grounds for seeking compassionate release where a defendant suffers from a terminal condition or a condition diminishing the ability to provide self-care. Rather, he seeks relief under § 1B1.13 cmt. n.1(B) regarding "Age of the Defendant."

## II.  LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations and citation omitted). Those limited circumstances are

provided under 18 U.S.C. § 3582(c)(1)(A). Effective December 21, 2018, the First Step Act of 2018 amended section 3582(c)(1)(A) by adding a provision that allows prisoners to directly petition a district court for compassionate release. That provision states:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

(B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. . . .

18 U.S.C. § 3582(c)(1).  Accordingly, a court may reduce a sentence upon motion of a defendant provided that: (A) the inmate has either exhausted his or her administrative appeal rights of the Bureau of Prison's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (B) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (C) the reduction is consistent with the Sentencing Commission's policy statement.  *See id.*  Courts are to consider the § 3553(a) factors, as applicable, as part of the analysis.[4]  *See* §3582(c)(1)(A).

The defendant generally bears the burden of establishing that compassionate release is warranted.  *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (providing that defendant bears the burden of establishing a reduction of sentence is warranted under § 3582(c) due to a retroactive guideline amendment); *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing *Hamilton* in the context of a § 3582(c) motion for compassionate release).

## III.   DISCUSSION

---

[4] These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

### A.     Defendant has Satisfied Administrative Exhaustion Requirement

Defendant submitted a request for compassionate release on May 8, 2020, which was denied by the warden on June 2, 2020. He submitted another request on June 11, 2020 and was again denied June 23, 2020. Doc. 1357-7. The Court finds, and the Government does not argue to the contrary, that Defendant has exhausted administrative remedies. The Court turns to the merits of Defendant's claim.

### B.     Extraordinary and Compelling Reason

The sentencing guidelines provide that "extraordinary and compelling reasons exist" for compassionate release when a defendant meets any one of several circumstances. Section 1B1.13 identifies four categories in which extraordinary and compelling circumstances may exist: (1) the defendant's medical condition; (2) the defendant's advanced age (at least 65 years old); (3) family circumstances; and (4) other reasons. *See* U.S.S.G. § 1B1.13, cmt. n. 1(A)-(D). The Court may grant compassionate release under one or more criteria. *See id.* Pertinent here, Defendant contends his age and "other" reasons provide an extraordinary and compelling basis for release.

According to the Sentencing Commission's policy statement on compassionate release, the "Age of the Defendant" qualifies as an extraordinary and compelling reason to support a sentence reduction if the defendant: (1) "is at least 65 years old;" (2) "is experiencing a serious deterioration in physical or mental health because of the aging process;" and (3) "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. 1(B). Defendant clearly

7

satisfies the first and third criteria as he is 67 years old and has been incarcerated since November 1991. Regarding the second factor, Defendant contends that he suffers from deteriorating health conditions due to the aging process. Specifically, he claims he suffers from a plethora of health issues, including diabetes, obesity, hypertension, and a history of coronary atherosclerosis.

In support of his motion, Defendant submits a chart of "Health Problems" that identifies his medical conditions including, among other problems, a diagnosis of type II diabetes, hypertension, kidney problems, glaucoma, chest pains, and coronary issues. Doc. 1357-2. He provides select medical records showing he tested positive for COVID-19 in July 2020. Doc. 1357-5. While he was not hospitalized and does not appear to have suffered any debilitating symptoms from contracting the virus, his medical records do reflect that he suffers from known comorbidities of diabetes, obesity, hypertension, and history of coronary atherosclerosis. *Id.* at 7. Defendant additionally submits the declaration of Dr. Tara Vijayan, a physician specializing in infectious diseases and internal medicine, who opines as to the greater likelihood of reinfection of the virus in the prison environment. Doc. 1357-6.

The Government responds that Defendant is able to care for himself in the prison environment, and thus, it argues that Defendant's medical condition does not rise to the level of being an extraordinary and compelling reason to warrant a reduction in his sentence.[5] Doc. 1358. For example, at a January 13, 2021 visit, Defendant was

---

[5] The Government submits copies of Defendant's medical records under seal. Doc. 1367.

"doing fine except for the pain on his lower back" radiating to the gluteal area on both sides. Doc. 1367 at 1. At that visit, Defendant denied shortness of breath, chest pain, abdominal pain, diarrhea, blood in stools, anxiety, depression, or any other symptoms. *Id.* The Government submits that his motion fails to demonstrate he cannot administer self-care. Additionally, the Government submits that Defendant has already contracted COVID-19, the likelihood of reinfection is speculative, and the current positivity rate at FCC Coleman is low.

In August 2021 the Defendant supplemented his motion with an updated medical history and additional medical records. Doc. 1385. Defendant submits that his physical health continues to deteriorate. He has blood in his stool, and he has been experiencing severe pain in his lower back, neck, legs, and buttocks. He complains that he has not received medical care and treatment for certain conditions. He has not received medication for his kidney problems. He has requested help or an MRI for the pain in his back and legs, but his requests "fell on deaf ears." *Id.* at 2.

Defendant submits medical records showing his chronic kidney disease has worsened due to his diabetes and hypertension. Doc. 1385-2 at 8–12. Defendant's glaucoma worsened to the point of requiring surgery. Doc. 1385-3. Defendant submits medical records documenting his heart issues, the procedures conducted in 2020, and March 2021 records reflecting a recurrence of angina symptoms and the need for a repeat coronary angiogram. In May 2021, Defendant underwent a right coronary angiography, left coronary angiography, and left heart catheterization. Doc. 1385-4. Finally, Defendant submits records reflecting his ongoing severe back and leg pain.

Doc. 1385-5. The Court has reviewed Defendant's medical records and finds that his medical records, particularly those submitted recently, reveal that Defendant suffers from age-related physical decline.[6]

Although Defendant asserts this motion is not about COVID, he does argue that the possibility of reinfection poses a health hazard, particularly given his underlying medical conditions. The Third Circuit has observed, and many district courts have agreed, that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). However, the Court recognizes that the pandemic, coupled with Defendant's particular health conditions, pose a greater risk to this Defendant.[7] Additionally, given Defendant's age, he is at a significantly higher risk of death should he contract COVID-19 again. According to the Centers for Disease Control ("CDC"), individuals in the age range of 65 to 74 have a five times greater risk of being

---

[6] As for Defendant's claim that he is not receiving treatment, his medical records reflect that he has received treatment for most of his conditions. Notwithstanding, his records evidence that his conditions are becoming worse and his physical health is in decline due to the aging process.

[7] In accordance with the Eleventh Circuit's opinion in *United States v. Bryant*, 996 F.3d 1243 (11th Cir. 2021), this Court declines to find that the pandemic, coupled with health conditions, constitute an extraordinary and compelling reason under the catchall "other" reasons category. *Id.* at 1263–65 (holding that the language "[a]s determined by the Director of Bureau of Prisons" contained within the catch-all provision precludes district courts from finding extraordinary and compelling reasons beyond those specified by the Sentencing Commission in Section 1B1.13).

hospitalized and a 90 times greater risk of death from COVID-19 than individuals who are in the age range of 18 to 29.[8]

The Court finds that Defendant, who is 67 years old, is experiencing a serious deterioration in physical health because of the aging process, and who has served nearly thirty years in prison, has met his burden of establishing that extraordinary and compelling reasons justify compassionate release under the sentencing guidelines. *See* USSG § 1.B.1

### C. Section 3553(a) Factors Support a Reduction in Sentence

Having found that Defendant demonstrates extraordinary and compelling reasons for compassionate release, the Court must next consider the factors identified in 18 U.S.C. § 3553(a) to determine whether it can conclude that the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3412(g)," U.S.S.G. § 1B1.13(2), and whether a reduction of his sentence is consistent with the Sentencing Commission's policy statements, 18 U.S.C. § 3582(c)(1)(A). Upon review of the record and having considered the § 3553(a) factors, the Court determines that Defendant is not presently a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(2); 18 U.S.C. §3142(g).

The Court finds persuasive the factually similar case of *United States v. Smith*, No. 3:97-cr-120-J-34PBD, 2020 WL 5106694 (M.D. Fla. Aug. 31, 2020), in which the court granted compassionate release to Smith who is 70 years old, had served twenty-

---

[8] *See* https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (last accessed Oct. 22, 2021).

three years of a life sentence, and who suffered from medical conditions that resulted in his deteriorating health, particularly given the potential for exposure to COVID-19. In that case, the court observed:

> Statistics show that age exerts a powerful influence on the recidivism rate, which declines as offenders get older. *The Effects of Aging on Recidivism Among Federal Offenders*, at 3, 23, United States Sentencing Commission (2017), available at https://www.ussc.gov/sites/default/files/pdf/research-andpublications/researchpublications/2017/20171207_Recidivism-Age.pdf. According to the Sentencing Commission, offenders aged 65 and older, like [defendant], are the least likely to be rearrested, reincarcerated, or reconvicted. *Id.* at 23.

*Smith*, 2020 WL 5106694, at *11. Defendant here is 67 years old. According to his BOP disciplinary record, he did not have any infractions between 2013 and 2019.[9] While Defendant's BOP disciplinary record is not without infractions, there are no recent infractions, the infractions prior to 2013 were nonviolent, and Defendant has made an apparent effort while in prison to demonstrate his efforts at rehabilitation. While incarcerated, Defendant has taken numerous courses, including educational classes and drug treatment programs, and he has obtained his GED. Doc. 1357-1–3; 1385-1. In support of his motion, Defendant submits a letter in which he advises the Court that he strives to be a better person each day and tries to be helpful to others, helping new and returning inmates stay out of trouble. Doc. 1357-4. Given his age, his demonstrated effort, his desire to better himself, and his good behavior, at least since

---

[9] The most recent BOP progress report of record is dated May 2019. Doc. 1357-1.

2013, the Court is persuaded that Defendant does not pose a danger to any other person or to the community. S*ee* U.S.S.G. § 1B1.13(2).

Section 3553(a) also requires a sentencing court to consider, among other factors, the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. 18 U.S.C. § 3553(a)(2). It also requires the sentencing court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), the sentencing range established by the sentencing guidelines, § 3553(a)(4)(A), and the need to avoid unwarranted sentencing disparities, § 3553(a)(6). Defendant has been incarcerated nearly thirty years, which weighs in favor of finding that his sentence reflects the seriousness of the offense, he has been justly punished, and that the punishment promotes respect for the law. Although the Court finds Defendant unlikely to reoffend, his ten-year term of supervised release should effectively deter any risk of reoffending.  In view of the § 3553(a) factors, reducing Defendant's term of imprisonment to time served with a ten-year term of supervised release is consistent with the applicable policy statements issued by the Sentencing Commission.

### D.     Defendant's Detainer

As pointed out by the Government, an immigration detainer is in place for this Defendant. However, the Government does not present any statutory authority rendering an inmate with an immigration detainer ineligible for compassionate release. The Court acknowledges some courts have expressed concern that release

from prison to be transferred to an immigration facility places a defendant at greater medical risk as it relates to COVID concerns. *See United States v. Sanchez*, No. 05-CR-20507, 2021 WL 2633660, at *6 (S.D. Fla. June 25, 2021) (collecting cases and noting that "releasing Defendant into ICE custody would likely be harmful to Defendant's interests in securing proper medical care for his medical issues"). However, here, Defendant's alternative is continued incarceration for life. And, as pointed out by Defendant, numerous courts have granted compassionate release to inmates notwithstanding the existence of an ICE detainer. *See* Doc. 1368 at 4–5. Further, even if taken into custody, Defendant may challenge his deportation. These matters are not before this Court. The motion before this Court is whether Defendant has established an extraordinary and compelling reason to justify a reduction in his sentence, which he has, and whether consideration of the § 3553(a) factors weigh in favor of his release, which it does.

## IV. CONCLUSION

The Court finds that Archer's age, declining health, and term of incarceration combine to constitute an extraordinary and compelling reason to grant his request for compassionate release under section 603 of the First Step Act of 2018. In granting his motion, the Court has considered the § 3553(a) factors and concluded that Archer does not pose a danger to the safety of any person or the community and further finds that a reduction in his sentence to time served, with a ten-year term of supervised release, is consistent with the Sentencing Commission's policy statements.

Accordingly, it is hereby

**ORDERED**:

1. Defendant's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 1357) is **GRANTED**.

2. The Court reduces Defendant Levine Justice Archer's term of imprisonment to **TIME SERVED**. Upon his release from prison, Defendant will begin a ten-year term of supervised release, subject to the mandatory and standard conditions of supervised release adopted by the Court in the Middle District of Florida.

3. There being a verified residence and an appropriate release plan in place (Doc. 1388), Levine Justice Archer shall be released as soon as appropriate travel arrangements are made and it is safe for him to travel. There shall be no delay in ensuring travel arrangements are made.

**DONE AND ORDERED** in Tampa, Florida on November 1, 2021.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any